Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>          vs.<br><br>$10,850.00 U.S. CURRENCY,<br>2013 MERCEDES MODEL C COUPE,<br><br>                         Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, Vanessa R. Waldref,

United States Attorney for the Eastern District of Washington, and Brian M. Donovan,

Assistant United States Attorney, brings this complaint and alleges as follows in

accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## I.  NATURE OF THE ACTION

1.     This is an action to forfeit and condemn to the use and benefit of the

United States of America the following listed property for violations of Title II of the

Controlled Substances Act, 21 U.S.C. § 801 *et seq.*

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  1

## II.  <u>THE DEFENDANT(S) *IN REM*</u>

2.      The Defendant Property consists of the following property:

    a.      $10,850.00 U.S. currency, seized by the Bureau of Alcohol, Tobacco, Firearms and Explosives, on or about June 22, 2022 ("Defendant Currency");

    b.      2013 Mercedes Model C Coupe, Washington License Number: CDD1230, VIN: WDDGJ4HBXDF952456 ("Defendant Vehicle");

hereinafter collectively referred to as the "Defendant Property" when appropriate.

## III.  <u>JURISDICTION AND VENUE</u>

3.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4.      This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## IV.  <u>BASIS FOR FORFEITURE</u>

6.      Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 5 above.

7.      The United States alleges that the Defendant Property is liable to condemnation and forfeiture to the United States for its use, in accordance with the

provisions of 21 U.S.C. § 881(a)(6), because it constitutes:  1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, violations of the Controlled Substances Act; and/or in accordance with the provisions of 21 U.S.C. § 881(a)(4), because it constitutes property used or intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances.

## V. <u>FACTS</u>

8.    An earlier criminal investigation into OSCAR CERVANTES (CERVANTES) first began in late 2019 or early 2020. CERVANTES is a Hispanic male, born in 1996, who was living at 191 South Street, Wapato, Washington. CERVANTES currently has four (4) felony and one (1) misdemeanor convictions in Washington State.

9.    The earlier investigation resulted in the execution of search warrants on January 28, 2020. On that date, federal agents executed a federal search warrant at 191 South Street, Wapato, WA. Pursuant to the search warrant execution, federal agents seized controlled substances, $7,700.00, and multiple rounds of ammunition.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  3

10.     The current underlying criminal investigation resulting in the seizure of the Defendant Property began in December 2021, when a Confidential Informant (CI) informed the Bureau Alcohol, Tobacco, Firearms and Explosives (ATF), that he/she could purchase fentanyl-laced pills from CERVANTES.  The CI stated he/she knew CERVANTES prior to this current investigation. As explained in detail below, ATF utilized the CI to conduct three controlled buys of fentanyl from CERVANTES.

11.     On June 14, 2022, a grand jury within the Eastern District of Washington returned an Indictment against CERVANTES for Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) from a prior incident in December 2019.

12.     On October 12, 2022, a grand jury within the Eastern District of Washington returned a Indictment against CERVANTES for Distribution of 40 Grams or more of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi).

A.      January 5, 2022 -- Controlled Buy #1 of Fentanyl

13.     On January 5, 2022, ATF agents utilized the CI to conduct a controlled purchase of approximately 100 fentanyl-laced pills from CERVANTES.  Prior to the controlled buy, Special Agent Bryan Bach (SA Bach) provided the CI with buy funds, and the electronic surveillance equipment to record the controlled purchase.  ATF Task Force Officer (TFO) Thomas Garza searched the CI's vehicle for contraband with negative results.  The CI then drove to the meet location, where the CI communicated with CERVANTES via Snapchat.  These messages were not

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  4

memorialized as the CI's phone closed Snapchat before the messages could be captured.  CERVANTES and the CI agreed to meet at Fiesta Foods, located at 1008 East Nob Hill Boulevard, Yakima, WA, to make the exchange.

14.     Immediately prior to the controlled purchase, Yakima Police Department (YPD) Detective Peter Equihua was conducting surveillance on CERVANTES'S residence, 191 South Street, Wapato, WA, which is owned by Alicia Cervantes, CERVANTES'S mother, and observed a beige-in-color 2005 Mazda 3 Sedan, Washington license AZP5246, registered to Alicia Cervantes, parked in front of the residence.  Detective Equihua then observed the Mazda leave the residence with a lone, male driver.  Additional surveillance units later observed the Mazda enter the parking lot of Fiesta Foods, with an unknown male in the front passenger seat.  YPD Detective Patrick Schad, who was positioned at Fiesta Foods, positively identified CERVANTES as the driver of the Mazda as CERVANTES drove by his location in the Fiesta Foods parking lot.

15.     Surveillance units maintained a visual surveillance on the Mazda and observed the CI enter the Mazda.  A short time later, the CI exited the Mazda and returned to his/her vehicle and departed the area.  The CI then communicated to TFO Garza that it had been a successful purchase for the suspected fentanyl pills.  The CI then drove out of the area and met with SA Bach and TFO Garza and provided the suspected fentanyl-laced pills to SA Bach.  The suspected fentanyl pills were not field-tested or physically counted due to safety hazards associated with exposure to

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  5

fentanyl but were sent to the United States Drug Enforcement (DEA) lab for analysis. However, the physical appearance of the suspected fentanyl-laced pills, i.e., blue color and size, imprinted with an "M" in a square on one side and "30" imprinted on the other side, were similar to other fentanyl pills seized in other investigations.  The approximate 100 suspected fentanyl-laced pills weighed 24 gross grams total with packaging, and 10.9 grams as originally packaged from CERVANTES.  The CI informed agents that there had been another male by the name of "Junior Garcia" present inside the Mazda during the controlled purchase, who the CI stated had no known involvement during the controlled purchase.  The CI stated they received the drugs from Gucci (CERVANTES) after providing the money directly to Gucci[1] (CERVANTES).  SA Bach searched the CI and his/her vehicle with negative results. The CI positively identified Gucci (CERVANTES) as the individual who had just sold them the fentanyl-laced pills based on prior interactions with CERVANTES.

B.    January 19, 2022 – Controlled Buy #2 of Fentanyl

16.    On January 19, 2022, ATF agents utilized the CI to conduct a controlled purchase of approximately 500 fentanyl-laced pills from CERVANTES. SA Bach and TFO Garza met with the CI, whom SA Bach searched for contraband with negative results.  SA Bach provided the CI with buy funds and electronic surveillance

---

[1] "Gucci" is a moniker used by CERVANTES.  CERVANTES has social media accounts listing his name as "Gucci", "kidgucci" or "kidgucci.com". CERVANTES also appears to have a "gucci" logo tattooed on his hand.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  6

equipment to record the controlled purchase.  TFO Garza searched the CI's vehicle for contraband with negative results.  SA Bach photographed the Snapchat account CERVANTES was using and noted the Snapchat user account was "kidgucci.com".

17.     The CI then drove to the meet location, communicating with CERVANTES via Snapchat.  Most, but not all, of these messages where memorialized because Snapchat messages automatically erase when the application is closed.  SA Bach asked the CI to read any messages from CERVANTES out loud so they would be memorialized on the recording.

18.     Prior to the controlled buy, YPD Detective Equihua was positioned outside 191 South Street, Wapato, WA and observed the Mazda parked in front of the residence.  Detective Equihua then observed the Mazda depart the residence.  As the Mazda was leaving the residence, Detective Equihua was able to positively identify CERVANTES who appeared to be the sole occupant of vehicle.  A short time later, surveillance units located CERVANTES driving the Mazda into Union Gap, WA.

19.     Immediately before the controlled purchase was to occur, CERVANTES changed the meet location to the Buffalo Wild Wings parking lot, located at 2529 Main Street, Union Gap, WA.  CERVANTES directed the CI to the Buffalo Wild Wings parking lot, where agents observed the Mazda.  During this time, the CI and CERVANTES were on a Snapchat call discussing the new meet location.  The CI parked near CERVANTES and entered the Mazda. Surveillance units had a visual on vehicle and observed the CI enter the Mazda

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  7

20.    A short time later, the CI returned to his/her vehicle and departed the area.  The CI then informed TFO Garza that it had been a successful purchase for the suspected fentanyl-laced pills.

21.    The CI then drove out of the area to meet with SA Bach and TFO Garza.  The CI subsequently provided the suspected fentanyl-laced pills to SA Bach and TFO Garza.  The suspected fentanyl pills were not field-tested or physically counted due to safety hazards associated with exposure to fentanyl but were sent to the DEA lab for further analysis.  However, the physical appearance of the suspected fentanyl-laced pills, i.e., blue color and size, imprinted with an "M" in a square on one side and "30" imprinted on the other side, were similar to other fentanyl pills seized in other investigations.  The approximate 500 suspected fentanyl-laced pills weighed 75 gross grams total with packaging, and 64 grams as originally received from CERVANTES.

22.    The CI stated he/she received the pills from "Gucci" (CERVANTES) after providing $1,500.00 directly to "Gucci" (CERVANTES).  SA Bach and TFO Garza searched the CI and his/her vehicle with negative results.  Surveillance units maintained mobile surveillance of Mazda after the controlled purchase and observed CERVANTES return to 191 South Street, Wapato, WA.

C.    February 24, 2022 – Controlled Buy #3 of Fentanyl

23.    On February 24, 2022, ATF agents utilized the same CI to conduct a third controlled purchase of approximately 100 fentanyl-laced pills from CERVANTES at the Fiesta Foods parking lot located at 1008 East Nob Hill

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  8

Boulevard, Yakima, WA.  During their brief with the CI, SA Kingston and TFO Garza searched the CI for contraband, with negative results.  TFO Garza provided the CI with buy funds and electronic surveillance equipment to record the controlled purchase.  TFO Garza also searched the CI's vehicle for contraband, with negative results. The CI then drove to the meet location.  The CI communicated with CERVANTES via Snapchat.  Most, but not all, of these messages were memorialized via photographs.  Messages not memorialized was due to Snapchat messages automatically erase when the application is closed.  TFO Garza asked the CI to read any messages from CERVANTES out loud so they would be memorialized on the recording.

24.     Prior to the controlled purchase, YPD Detective Schad was surveilling 191 South Street, Wapato, WA, and observed a lone Hispanic male with the same physical characteristics as CERVANTES leave the residence and enter a white Mercedes Benz coupe with black wheels, tinted windows, bearing Washington License Plate CDD1230 – the Defendant Vehicle – parked in front of the residence. YPD Detective Schad then observed the Defendant Vehicle depart the residence and pass his location, at which time Det Equihua was able to positively identify CERVANTES as the lone driver of the Defendant Vehicle.

25.     Surveillance units followed CERVANTES to the Fiesta Foods parking lot located at 1008 East Nob Hill Boulevard, Yakima, WA, where CERVANTES met up with a blue Ford Mustang, bearing Washington state license plate CBC1823.   An

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  9

unknown Hispanic male exited the blue Ford Mustang and entered Defendant Vehicle for approximately 2-3 minutes, then exited the Defendant Vehicle and walked back to the blue Ford Mustang.  Surveillance observed the unknown Hispanic male place a small package in his pants pocket while returning to the blue Ford Mustang.

26.    After meeting with the unknown Hispanic male, the CI and CERVANTES discussed a meet location via Snapchat.  CERVANTES then parked near the CI and entered the Defendant Vehicle with CERVANTES sitting in the driver's seat.  A short time, later the CI exited the Defendant Vehicle and returned to their vehicle and departed the area.  The CI then informed TFO Garza that is had been a successful purchase for the suspected fentanyl-laced pills.

27.    The CI then drove out of the area and met with SA Kingston and TFO Garza, where the CI provided the suspected fentanyl-laced pills to SA Kingston.  The suspected fentanyl pills were not field-tested or physically counted due to safety hazards associated with exposure to fentanyl but were sent to the DEA lab for analysis.  However, the physical appearance of the suspected fentanyl-laced pills, i.e., blue color and size, imprinted with an "M" in a square on one side and "30" imprinted on the other side, were similar to other fentanyl pills seized in other investigations. The approximate 100 suspected fentanyl laced pills weighed 27 gross grams total with packaging, and 12 grams as originally packaged from CERVANTES.  The CI stated they received the pills from "Gucci" (CERVANTES) and provided the money directly to CERVANTES.  TFO Garza searched the CI and their vehicle with negative results.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  10

D.     May 26, 2022 – Fentanyl Price Check with CERVANTES

28.     On May 26, 2022, the CI, at the direction ATF, called CERVANTES to obtain a price check from CERVANTES on 500 or 1,000 fentanyl laced pills. The CI stated they initially asked CERVANTES via Snapchat for the price of a "half-boat" which was not captured via photograph.  When the CI asked CERVANTES "How much for a full boat?", CERVANTES responded, "25", which law enforcement believes means $2,500 which is in the price range for 1,000 fentanyl laced pills based off my experience.  Generally, 1,000 fentanyl laces pills are commonly referred to as a "boat", and 500 pills referred to as a "half-boat" in the drug-trafficking world. This communication indicates that CERVANTES was trafficking fentanyl-laced pills.

E.     June 8, 2022 – Surveillance of the Defendant Vehicle

29.     On June 8, 2022, ATF Special Agents David Steen and Bryan Bach observed CERVANTES washing the Defendant Vehicle in front of 191 South Street, Wapato, WA.  Agents observed CERVANTES using a hose, which appeared to be connected to the residence, to wash the Defendant Vehicle.

30.     Over the course of the investigation into CERVANTES, law enforcement has become familiar with the Defendant Vehicle and observed that CERVANTES regularly drives the Defendant Vehicle.  It appeared this is the same Defendant Vehicle CERVANTES used during controlled purchase number 3, which at that time, had a temporary registration affixed to it.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  11

31.     SA Bryan Bach queried Washington Department of Licensing for Washington License Plate CDD1230 and learned that the Defendant Vehicle is registered to "Alicia Ruiz Cervantes", the mother of CERVANTES.  The registered address for the Defendant Vehicle is 191 South Street, Wapato, WA, with a report of transfer of title on April 15, 2022.

32.     On June 10, 2022, ATF Special Agents Steen, Katlin Standiford and Bryan Bach, along with ATF TFOs Mark Keller and Thomas Garza of the Yakima Field Office conducted surveillance of CERVANTES and observed the Defendant Vehicle parked in the driveway of 191 South Street, Wapato, WA.  The vehicle was observed backing out of the driveway and turning eastbound towards Allen's Market place. CERVANTES was later determined to be the sole occupant of this vehicle. CERVANTES drove to 520 Campbell Road, Wapato, WA, where he remained for approximately 40 minutes.  CERVANTES then met with several unknown Hispanic males outside of this residence.  CERVANTES then left in the Defendant Vehicle and drove towards Yakima, WA, before surveillance lost the vehicle in traffic.

F.     Execution of Search Warrants and Seizures of Defendant Property

33.     On or about June 22, 2022, federal agents from ATF and DEA, along with Task Force Officers, executed federal search warrants at 191 South Street, Wapato, WA, on the 2005 Mazda 3 Sedan, Washington License Plate AZP5246, and on the 2013 Mercedes Benz, Washington License Plate CDD1230 (the Defendant Vehicle).

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  12

i.    *191 South Street, Wapato, WA*

34.    Upon execution of the search warrant, the occupants came to the front door of the house and were called out of the house. The occupants were identified as Amanda Riojas and Alicia Ruiz Cervantes. Alicia is the homeowner of the property and Amanda is dating Ernesto Cervantes-Ruiz. Simultaneously, a separate entry team knocked and announced at the detached garage, which Ernesto Cervantes-Ruiz exited. Once the property was secured, WSP Trooper Woodside and K9 Brakken conducted a controlled substance sniff of the residence and vehicles.

35.    SA Bach and Detective Equihua attempted to interview Alicia Cervantes, who only speaks Spanish. Alicia was informed two vehicles that where registered to her were being seized due to their facilitation of drug trafficking. Alicia denied the vehicles were used to facilitate drug trafficking and stated she wished to not answer any more questions. The interview was terminated.

36.    Cervantes-Ruiz, Riojas, and Cervantes remained in the front yard until the conclusion of the execution of the search warrant.

37.    During a search of the premises, the following items were located in the main part of the house and seized:

a.    One (1) vehicle title for 2013 Mercedes, Model C.

b.    Two (2) bundle's of cash located in Alicia Cervantes' room. Bundle 1 was found in found in a dresser drawer in Alicia Cervantes' bedroom. Bundle 2 was also found in a dresser drawer in Alicia

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  13

Cervantes' bedroom. Bundle 1 was counted and determined to be $3850.00 dollars. Bundle 2 was counted and determined to be $7000.00 dollars.

c.      Currency located on top of a dresser in Oscar Cervantes bedroom, found in the house, which totaled $395. The cash was not processed into ATF Property and was released to DEA Yakima Task Force Officer Rafael Sanchez on June 24, 2022, for Washington State seizure.

38.    Once the property was secured, WSP Trooper Woodside and K9 Brakken conducted a controlled substance sniff of the residence and vehicles. K9 Brakken alerted to controlled substances.

39.    On June 24, 2022, ATF Special Agent Bryan Bach and Katlin Standiford transported four different bundles of U.S. currency, seized during search warrants on June 22, 2022, at 191 South Street, Wapato, WA, which was counted and converted into cashier's checks at Bank of America located at 2515 Main Street, Union Gap, Washington. Bundle one and two where then combined together to make one cashier's check payable to the US Marshal Service in the amount of $10,850.00 dollars.

40.    TFO Garza, the evidence team leader for the garage, reported the following items were located in the garage:

a.      Two clear plastic bags containing suspected fentanyl laced pills located in a disposable glove box near tattooing supplies, located by Det Saldana.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  14

b.      Springfield XD-9 pistol, 9mm, bearing serial number BY529039, which contained a loaded magazine (16 rounds), with no round in the chamber, located by SA Hudson in  a black purse with a Washington state concealed pistol license in the name of Amanda Riojas.

c.      One box containing .22lr ammunition contained in a small safe, located by TFO Garza.

d.      Hornady 40 caliber ammunition contained in a small safe, located by TFO Garza.

e.      Assorted 9mm ammunition contained in a small safe, located by TFO Garza.

f.      Night Owl DVR, located by Sgt. Soptich

g.      One grey iPhone with clear case (Ernesto identified as his), located by TFO Garza.

h.      Prescription Pill bottle containing Suboxone, with the name Guillermo Morfin, located by TFO Garza.

i.      Bulk US currency located in a black backpack by SA Hudson.1 Later counted by Bank of America and determined to be one thousand six hundred eighty-six dollars ($1686.00). (Not entered into ATF evidence, but transferred to DEA TFO Raphael Sanchez).

//

//

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  15

ii.    *Search of Defendant Vehicle*

41.    When the search warrant was executed for the residence, the Mazda 3 and Mercedes Model C250 (Defendant Vehicle), which also had Federal search warrants, were transported back the ATF Yakima Field Office where the search warrants were to be executed at a later time.

42.    On June 22, 2022, ATF Special Agents of the Yakima Field Office executed the two Federal search warrants pertaining to the Mazda 3 and Mercedes Model C250 (Defendant Vehicle) seized from 191 South Street, Wapato.

43.    Federal search warrant 1:22-MJ-04104-ACE was executed on the Defendant Property, a White 2013 Mercedes Benz C Model coupe, bearing Washington license plate: CDD1230 and VIN: WDDGJ4HBXDF952456. Located in the Mercedes was $34.55 in US currency. Also located was male clothing, cologne, cigars, and condoms, indicating CERVANTES was in control of the vehicle. No women's clothes were located.

44.    Federal search warrant 1:22-MJ-04103-ACE was executed on a Beige Mazda 3 Sedan, bearing license plate AZP5246 and VIN: JM1BK123651325396. Alicia Cervantes' purse, with her driver's license, was also located in the vehicle, along with a small amount of US currency in her purse and coins scattered between the center console and under the seats. The following morning SA Bach had arranged for Alicia Cervantes to retrieve her purse and contents. SA Bach collected the items for Cervantes, including the US Currency which totaled $20.92. While SA Bach was

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  16

gathering the coins, he located three suspected fentanyl laced pills. The first was in the center console and two located under the driver seat.

G.    Administrative Claims

45.    On or about August 30, 2022, ATF's Forfeiture & Seized Property Division received an administrative claim from Alicia Ruiz Cervantes, signed by "Alicia Cervantes", for the Defendant Property.

46.    In her claim, Alicia Ruiz Cervantes alleges that the Defendant Currency seized from her dresser drawer "was money borrowed from my daughter and friend to repair my house." She further claims that the Defendant Vehicle is an upgrade from her Mazda, which bought a few months prior to the seizure.

i.    *Defendant Currency*

47.    In support of her claim as to the Defendant Currency, Alicia Cervantes provided a handwritten notarized statement dated August 16, 2022, signed by Rosemary Gomez, which stated that Rosemary Gomez loaned Alicia Cervantes $2,800 on June 15, 2022, for house repairs.

48.    A transaction summary from Rosemary R. Gomez's card ending in 1064, submitted by Alicia Cervantes in support of her claim, shows that for September, October, November 2021, and February, 2022, March 2022, April, 2022, May, 2022, and June 2022, indicate various cash withdrawals of various amounts. The records also show that Rosemary Gomez received monthly SSI & SSA funds via direct deposit totaling amount $861.00.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  17

49.     SA Bach interviewed Rosemary Gomez on November 21, 2022. Rosemary is the biological mother of Amanda Riojas, the boyfriend of Ernesto, who lives in the back garage area of Alicia Ruiz Cervantes' home. Amanda was raised by her aunt, Rosemary's sister.

50.     Rosemary Gomez indicated that provided a loan, but does not know the exact amount of the loan. She believes it may be between $1,000 - $2,000. She stated they asked for more money ,but she stated she could not give more until they paid her back because she is on a fixed low income. She stated the source of the funds was from Social Security

51.     Rosemary Gomez stated that Amanda Riojas drove Ms. Gomez to Alicia Cervantes' house where Rosemary provided the money to Alisha. She believed the denominations were $20 and $100.

52.     Rosemary Gomez stated she does not remember when the loan started. She stated it was a certain amount, then she provided more money when they asked so she is unsure the total because she provided money on different occasions. Ms. Gomez stated she has a very bad memory because she takes so many pills.

53.      Rosemary Gomez stated there is no written loan document, no timeline to pay back, and no terms of the loan or interest. She does not have a phone number for Alicia Cervantes. She indicated she had only been to Alicia Cervantes' house 2-5 times and that she does not know Alicia Cervantes very well.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  18

54.    Rosemary Gomez stated she was made to believe the loan was for house repairs – perhaps a roof repair. She further believed Alicia Cervantes was going to sell the house sometime in the future.

55.    Amanda Rioja is Rosemary Gomez's state-appointed caretaker. In that role, Amanda Riojas cares for Rosemary Gomez 3-4 days per week from 10:30-2:30.

56.    In further support of her administrative claim, Alicia Ruiz Cervantes includes a handwritten notarized statement dated August 25, 2022, from Laura Herrera, Alicia Cervantes' daughter. The note states that Laura Herrera let Alicia Cervantes borrow $2,200 in March 2022 and an additional $6,000 in June 2022, for a total of $8,200. The note alleges that the funds were lent to Alicia Cervantes for house repairs. The note states the parties agreed that Alicia Cervantes would repay the funds when she sold her house. Included with the note are statements of withdrawals from Laura Herrera's bank account. However, the documents provided are mostly illegible.

57.    SA Bach interviewed Laura Herrera on November 21, 2022.  Laura Herrera stated there was no written documentation or terms. She repeated the claim that she loaned Alicia Cervantes the funds for house repairs. She claimed Alicia Cervantes agreed to return money once house is sold.

58.    Laura Herrera stated has no job, but her husband works for gas company as an operator and provides for her. Laura Herrera claimed the money was given to Alicia Cervantes when she came to visit. Alicia Cervantes takes the bus when she

comes to visit, possibly the Fronteras from Wapato or Toppenish to Modesto, CA.
Laura Herrera could not recall the denominations of the funds.

59.    Attempts to interview Alicia Ruiz Cervantes have been unsuccessful.

60.    As noted above, during a previous execution of federal search warrants at
Alicia Cervantes' residence, federal agents seized $7,700 from Alicia Cervantes. On
September 10, 2021, SA Bach interviewed Alicia Cervantes regarding that seizure and
her claim to those funds. Notably, Alicia Cervantes asserted a similar claim that the
funds that were seized at that time were savings to perform house repairs. Alicia
Cervantes' prior administrative claim was denied by ATF.

ii.    *Defendant Vehicle*

61.    In support of her claim to the Defendant Vehicle, Alicia Ruiz Cervantes
provided the following documentation:

a.    A Washington State Vehicle Report of Sale which lists a sale date
of February 6, 2022, and a sale price of "Trade + $5,000." The seller is
listed as Edith Hernandez and the buyer is listed as Alicia Ruiz
Cervantes.

b.    A duplicate of a Washington State Vehicle Registration Certificate
dated August 26, 2022, originally issued on April 15, 2022, listing Alicia
Ruiz Cervantes as the registered owner of the Defendant Vehicle.  The
registration is signed "Alicia Cervantes".

c.    A partial transaction history for Customer Alicia Cervantes Ruiz,

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  20

Account CA/NV Savings # XXXXXX5861, showing a withdrawal of $5,000.00 in the amount of $5,000.00, on September 28, 2020, and a check fee for $8.00 posted the next day on September 29, 2020.

62.     On November 21, 2022, ATF SA Bryan Bach contacted the seller, Edith Hernandez, via telephone and interviewed her about the sale of the Defendant Vehicle. During the interview, Ms. Hernandez stated the following:

a.     She is not related to the people who bought the Mercedes and she has not had contact with them since the sale.

b.     She sold the vehicle online through OfferUp. The date of sale of February 6, 2022, sounded correct to her.

c.     The reason the bill of sale says "trade" is because one of the males that came to buy it stated it needed to say that to be easier at the DMV. Ms. Hernandez stated that the actual sale price was $10,500, which was paid in $100 dollar bills.

d.     When asked about the purchasers of the vehicle, initially Ms. Hernandez stated there was not a female present during the purchase. But then Ms. Hernandez recalled that when she asked for the buyer's identification, it was provided by a female. Ms. Hernandez could not guess the age of the female. Ms. Hernandez said that the female was not very involved in the purchase and there were three or four males present which were the ones interacting with her. Ms. Hernandez could not

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  21

remember specifics about the males. SA Bach asked if they had any tattoos on their hands and neck and she stated they all did. She stated she could not remember if they had any gold teeth.

63.     As noted above, Alicia Ruiz Cervantes is on a limited income. Tax returns provided by Alicia Ruiz Cervantes in a previous administrative claim indicated that she earned approximately $16,029 in 2019. A cash purchase of a vehicle for $10,500 would represent approximately 65.5% of her 2019 earnings.

64.     As noted above, when the recent search warrants were executed, Alicia Ruiz Cervantes' purse and driver's license were located in the 2005 Mazda. There were no indicia located in the Defendant Vehicle indicating that she is the primary user of that vehicle.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, the United States alleges that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because it constitutes:  1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, violations of the Controlled Substances Act; and/or in accordance with the provisions

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  22

to facilitate a violation of the Controlled Substances Act, which is used, or intended to

be used, in any manner or part, to commit, or to facilitate the commission of,

violations of the Controlled Substances Act; and/or in accordance with the provisions

of 21 U.S.C. § 881(a)(4), because it constitutes property used or intended for use to

transport, or in any manner to facilitate the transportation, sale, receipt, possession, or

concealment of controlled substances.

WHEREFORE, the United States of America requests that notice of this action

be given to all persons who reasonably appear to be potential claimants of interests in

the property; that the Defendant Property be forfeited and condemned to the United

States of America; that the plaintiff be awarded its costs and disbursements in this

action and for such other and further relief as this Court deems proper and just.

DATED this 28th day of November 2022.

Vanessa R. Waldref
United States Attorney

Brian M. Donovan
Assistant United States Attorney

## VERIFICATION

I, Bryan A. Bach hereby verify and declare under penalty of perjury that I am a

Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, in

Yakima, Washington, that I have read the foregoing Verified Complaint *in rem* and

know the contents thereof, and that the matters contained in the Verified Complaint

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*  23

are true to my own knowledge, except that those matters herein stated to be alleged on

information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are

the official files and records of the United States, information supplied to me by other

law enforcement officers, as well as my investigation of this case, together with

others, as a Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing

information is true and correct.

DATED this __28__ day of November 2022.

Digitally signed by BRYAN BACH
Date: 2022.11.28 16:45:00 -08'00'

Bryan A. Bach
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

VERIFIED COMPLAINT FOR FORFEITURE *IN REM* 24